KEMPNER *v.* DOOLEY.

Opinion delivered May 11, 1895.

*1. Amendment—Discretion of court.*

It is within the court's discretion to refuse to permit an answer to be amended, so as to set up a new defense, after the cause has been heard upon the pleadings and evidence.

2. *Marshaling assets—Principal and surety.*

Where a principal and his surety jointly execute a mortgage to a creditor, each conveying his own land, and the principal subsequently mortgages his land to secure another debt, the surety is entitled, on foreclosure of both mortgages, to have the land of his principal sold first, and the proceeds applied in satisfaction of the debt for which he is surety, before resort can be had to the surety's land.

3. *Infant—Duty of court to protect rights of.*

The supreme court will protect the rights of infants, though they have not appealed from the decree of the chancellor, to their prejudice.

Appeal from Lonoke Chancery Court.

DAVID W. CARROLL, Chancellor.

STATEMENT BY THE COURT.

On the 2d day of December, 1891, the appellant filed in the Lonoke chancery court a complaint against B. L. Adams and Alabama Adams, his wife, Perry Adams, Clara Adams and P. C. Dooley, alleging that on the 8th day of April, 1889, B. L. Adams and Allen Adams were the owners of the following lands in Lonoke county, Ark., to-wit : Southeast quarter of the southwest quarter and northwest quarter of the southwest quarter and the northeast quarter of the southwest quarter, all in section eleven (11), township one (1) south, range ten (10) west, containing 120 acres ; that, on the 8th day of April, 1889, the defendant B. L. Adams executed and delivered to plaintiff his two promissory notes for $495.50 each, payable in one and two years, and bearing interest

at 10 per cent. per annum from date till paid; that on the same day, to secure the payment of said notes, B. L. Adams and Alabama Adams, his wife, and Allen Adams and Clara, his wife, executed and delivered to plaintiff a mortgage on the above lands, which mortgage was recorded in Lonoke county on the 19th day of April, 1889; that, sometime prior to this, the said B. L. Adams and Allen Adams had partitioned and divided the above lands between themselves, by which partition and division each took a certain part (describing it), and that, in pursuance of such division and partition, each took for himself possession of the part going to him, and built houses and made improvements thereon; that after the execution of the mortgage to plaintiff Allen Adams died, leaving him surviving as his only heirs his wife, Clara, and a son, Perry, of lawful age; that P. C. Dooley holds a mortgage on the above land given by B. L. Adams; that nothing has been paid on plaintiff's notes. Prayer for judgment against B. L. Adams; that the partition heretofore made between B. L. and Allen Adams be made valid and established, or, if the court declines that relief, that said lands be partitioned; that plaintiff's judgment be declared a lien on B. L. Adams' part; and that the lien be foreclosed, etc.

Plaintiff filed an affidavit that defendant was a nonresident, and had warning order issued, and attorney *ad litem* appointed.

At the May term, 1892, P. C. Dooley filed his answer, asking that plaintiff be required to prove his debt, and alleging that Allen Adams left other heirs, who are mentioned, and who are made parties, and afterwards properly brought into court; alleging further that B. L. Adams, on the 19th day of January, 1891, gave to him a mortgage on all his interest in the land described in the complaint to secure a note for $782.67; alleging that plaintiff ought to proceed against the land of

Allen Adams before selling that of B. L. Adams; alleging that he does not know how the land was divided between B. L. and Allen Adams by United States survey, but knows it was divided by metes and bounds; alleging that B. L. Adams had paid plaintiff large sums of money since the execution of the mortgage, and asking that the application of the payments be inquired into. Prayer that answer be taken as a cross-complaint; that all heirs of Allen Adams (naming them) be made parties; that plaintiff account for all moneys received by him from B. L. Adams; that Allen's interest in the land be first sold to satisfy plaintiff's mortgage, and that B. L's interest be sold to pay defendant.

At the same term Kempner filed his answer to cross-complaint of Dooley, stating that he is not advised as to Dooley's debt or lien, and asking that strict proof be required thereof; alleging that the mortgage which he seeks to foreclose was intended to convey only the interest of B. L. Adams, and that the land that belonged to Allen Adams is not subject to either his or Dooley's mortgage, and denies that anything whatever has been paid on the notes. At the same term plaintiff Kempner filed an amendment to his complaint, showing more particularly the description of the land taken by B. L. and Allen Adams, under their partition agreement, and asking that his judgment, when obtained, be declared a lien upon the land belonging to B. L. Adams.

At the same term proof of publication of warning order against B. L. Adams was filed; also answer of guardian *ad litem* for minor heir of Allen Adams. The attorney *ad litem* filed his answer at May term, 1893, and the guardian *ad litem* for the minor defendant at the same time filed additional answer.

The plaintiff, to maintain the issue on his part, testified as follows: "B. L. Adams gave me the notes mentioned in complaint, and I introduce them in evi-

dence.   B. L. Adams and Alabama, his wife, and Allen
Adams and Clara, his wife, gave me the mortgage men-
tioned in complaint, which I here introduce in evidence.
The land belonged to B. L. and Allen Adams.   I intro-
duce in evidence their deed to the land.   Before the
mortgage was executed, they divided the land (witness
here describes the part going to each).   Nothing has
been paid on the notes, either principal or interest.
After the execution of the mortgage, Allen Adams died,
leaving as his heirs his wife, Clara, a son, Perry Adams,
and another son, Julius Adams, who has since died,
leaving surviving him his widow, Esther Adams, now
Esther Porter, and a child, Julia Adams, a minor.   The
mortgage I took was intended to convey the interest of
B. L. Adams in the above land."   Cross-examination :
"B. L. Adams' account with me had been running one
year, with a small balance from previous years, when
he gave me the notes.   The balance, March 17, 1888,
was $220.45.   His account with me in 1888 was $1,619.55.
He paid me in the fall of that year, from October 20,
1888, to February 26, 1889, $600.35.   The balance com-
ing over from the season of 1888 was $989.   In this
amount is included the Pirtle mortgage on the land in
controversy, for $330.   I introduce that mortgage in evi-
dence.   I paid Turner & Pirtle $330 on this mortgage,
and I have not charged one cent of interest against
Adams on account thereof."   The witness furnishes an
itemized statement of the account of 1888.

After the trial had begun, and the evidence heard,
defendant Dooley offered, before the entry of the decree,
to file a sworn amendment to his answer, in which he
averred that the Turner & Pirtle note was for the loan
of money to B. L. Adams and for $300, face value, and
bearing 10 per cent. interest per annum, and Adams
paid Turner & Pirtle $17 bonus ; and, in fact, Adams
received from Turner & Pirtle only $283 for the note,

instead of $300, which sum Adams was compelled to pay to secure said loan. The transaction was usurious. At the end of the year Kempner took up the note, and paid Turner & Pirtle $330 for it, which now amounts to $464, which is included in Kempner's mortgage. That these facts first came to defendant's knowledge during the trial, and that he then suggested usury, and he wished to file such an amendment as he here offered to file setting up usury; and he understood that he would be allowed to do so. From the court's refusal to allow this amendment to be filed, the defendant Dooley excepted, and prayed an appeal to the supreme court.

The court gave Kempner judgment against B. L. Adams for $1,392.60, and Dooley judgment against him for $965.21; decreed that Kempner's judgment be a lien on the entire 120 acres, and that the sum due Dooley be a lien on that part belonging to B. L. Adams; establishing and making valid the partition, and vesting title in the parties according to their division of the land; ordering that the Allen Adams part of the land be sold first to pay Kempner, and then that B. L.'s part be sold, and Kempner paid, if there is any balance due him; the remainder to go to Dooley. The decree bars dower, and directs payments of costs, etc.

Kempner appealed to this court, and seeks to reverse that part of the decree that directs the Allen Adams land to be sold to pay his judgment against B. L. Adams. None of the other parties appealed except Dooley, who brought a cross-appeal.

*J. H. Harrod* for appellant.

The court erred in ordering the Allen Adams land sold to pay the debt of B. L. Adams. The undisputed evidence is that the mortgages of both parties were intended to cover and embrace the *same property*, that is, B. L. Adams' part, and no question of marshaling securities could arise.

*P. C. Dooley* pro se.

1.   Kempner is not injured by the decree, nor preju-
diced.   43 Ark. 220, 535 ; 46 *id.* 485 ; 52 *id.* 181; 54 *id.* 4.

2.   Kempner was properly required to exhaust his
remedy against that security upon which Dooley had no
claim.   2 Jones on Mortg. sec. 1620 ; 30 N. J. Eq.
*Hiles* v. *Coult* ; Story, Eq. Jur. secs. 559, 560 ; 32 Ark.
494 ; 31 *id.* 303 ; 18 *id.* 172 ; Adams, Eq. pp. 617, 618,
272 ; 8 Ves. 382.

3.   It was error to refuse to allow Dooley to file the
amendment to his answer.   42 Ark. 57, 503 ; 25 S. W. 505.

HUGHES, J. (after stating the facts).   It was in the **1. Discretion as to amendments.**
sound discretion of the circuit court to permit or re-
fuse to permit the amendment offered by the appellee,
Dooley, to be made at the time it was offered, and the
court is of the opinion that the circuit court did not
abuse its discretion in refusing to allow the amendment
to Dooley's answer, after the cause had been heard upon
the pleadings and evidence.

When Allen Adams had mortgaged his land to se- **2. Marshaling assets.**
cure the payment of the debt of B. L. Adams, he stood
in the attitude and had the equities of a security for
the payment of the debt of B. L. Adams, and his inter-
est should have been protected by the sale first of B. L.
Adams' land mortgaged to secure payment of the same
debt.   When the principal and surety each mortgages
his own property to secure the debt of the principal, the
surety is entitled to have the property of the principal
sold first, and the proceeds of the sale applied in satis-
faction of the debt.   *Keel* v. *Levy*, 19 Oregon, 450 ;
*James* v. *Jacques*, 26 Tex. 320 ; *Neimcewicz* v. *Gahn*, 3
Paige, Ch. 614 ; *Pacific Guano Co.* v. *Anglin*, 82 Ala.
492.

In this case, however, there is no appeal from the **3. Duty of chancery court to protect infants.**
decree that Allen Adams' land should be first sold, by

any of the heirs of Allen Adams. But one of these heirs, who was made a party to the suit, was an infant at the time of the decree, and still is, and, though she has not appealed, a court of chancery will protect her interest, as minors in a suit in equity are wards of a court of chancery. "The chancellor is the guardian of all infants whose rights are drawn in question before him, and it is our duty to see that they are protected." *Tillar* v. *Cleveland*, 47 Ark. 288. For the error in ordering the interest of the minor heir in Allen Adams' land first sold to satisfy the debt of B. L. Adams, the decree is reversed, and the cause is remanded with directions for a decree, and for further proceedings according to law, and not inconsistent with this opinion.