## CHARLESTON.

KESTER v. HILL.

Submitted January 30, 1899—Decided Nov. 11, 1899.

1. FIDUCIARY—*Commission.*

Where a fiduciary lays before a commissioner of accounts a statement of receipts for any year within six months after its expiration, and he be found chargeable for that year with any money not embraced in such statement, he shall have no commission on the money not so embraced in the statement, unless allowed by the court. Section 7, chapter 87, Code. (p. 750).

2. FIDUCIARY—*Commission.*

But euch fiduciary is entitled to commission on money included in such statement. (p. 751).

3. GUARDIAN—*Interest on Balances.*

Under section 10, chapter 82, of the Code, any person acting as guardian, whether duly appointed or not, is liable to be charged compound interest on balances found due at the end of each year while so acting, in like manner as regularly appointed guardians. (p. 751).

4. COMMISSIONER OF ACCOUNTS—*Reports—Infants.*

The rulings of this Court that, "where exceptions are taken to certain parts of a commissioner's report, the others not excepted to are admitted to be correct, both as regards the legal principles and the evidence on which they are based," can only apply as to adult parties, and not as to infants. (p. 749).

Appeal from Circuit Court, Harrison County.

Bill by Cecil M. Kester and others, by Ella Kester, their next friend, against W. E. Hill and others. Decree for plaintiffs, and defendants appeal.

*Modified.*

W. SCOTT and DAVIS & DAVIS, for appellants.

LEWIS C. LAWSON, for appellees.

MCWHORTER, JUDGE.

Cecil M. Kester and others, by Ella Kester, their next friend, filed their bill in equity in the circuit court of Harrison County against W. E. Hill, their guardian, and J. B. Sandusky and Henry C. Ross, his sureties, and others, for

the purpose of requiring his guardian, Hill, to make settlement of his accounts as such fiduciary, and to surcharge and falsify certain settlements theretofore made by such guardian before A. Werninger, commissioner of accounts. Answers were filed, and the cause was referred to Commissioner M. M. Thompson for accounts and report. The commissioner made several reports. The cause was heard, a decree entered, and appeal taken therefrom to this Court. A decision therein is reported in 42 W. Va. 611, (26 S. E. 376), which opinion concludes as follows: "The decree complained of is therefore reversed so far as it holds the sureties of W. E. Hill as guardian in the bond given at the time of his appointment, as such, liable for the proceeds of the sale of the real estate in the bills mentioned, and said decree is affirmed so far as it holds that J. B. Sandusky was improperly appointed as guardian of plaintiffs without the removal of said W. E. Hill as such guardian; and, it appearing that a considerable sum of money belonging to plaintiffs went into the hands of J. B. Sandusky after he was so improperly appointed guardian of plaintiffs, this cause is remanded to the circuit court of Harrison County, in order that it may be properly ascertained from what source the money was derived which went into the hands of said J. B. Sandusky as the property of these plaintiffs, and that proper decrees may be entered as to its collection and investment for the benefit of plaintiffs, and for the settlement of the accounts of said W. E. Hill as guardian." When the cause was returned to the circuit court, the plaintiffs, by permission of the court, filed exceptions to Commissioner Thompson's reports settling the accounts of the guardian, W. E. Hill, overruling defendant's objections thereto. The cause was heard on the 3rd day of February, 1897. The said exceptions were sustained, and a decree entered recommitting the cause to Commissioner M. M. Thompson, with directions to open up, and audit, and restate the accounts of Guardian W. E. Hill for each year of his guardianship from the time of his appointment, and with special directions to report upon certain items of credit allowed said guardian in his settlements made before A. Werninger, as shown by Exhibits Nos. 10 to 17, inclusive, which were especially surcharged and falsified in the bill; besides making the further report authorized by the decis-

ion of this Court as to the funds of plaintiffs which went into the hands of J. B. Sandusky after he was improperly appointed guardian of plaintiffs, and from what source the money was derived which went into the hands of said Sandusky. Commissioner Thompson filed his report made under the decree of recommittal, to which report defendants filed the following exceptions: "(1) All of the defendants in this cause except to the master commissioner's report because the order of reference is contrary to the opinion of the Supreme Court of Appeals rendered in this cause, said opinion not authorizing a restatement of the accounts of W. E. Hill as guardian, and relieving his sureties of all responsibility for the real estate sold by Hill. (2) The defendants W. E. Hill and J. B. Sandusky except to the said report because they were not given credit for the balance unpaid in the note of M. E. Kester, which balance appears from the evidence of J. B. Sandusky. (3) All the defendants except to so much of said report as charges defendants with the item of forty-nine dollars and sixty-six cents rent claimed to be unpaid by H. Kemble, as that matter has been previously reported on and adjudicated. (4) The defendant J. B. Sandusky excepts to said report because it does not properly ascertain the amount of the real estate sold by Hill and the amount obtained for the same. (5) The defendant J. B. Sandusky also excepts to so much of said report as charges him with three hundred and sixty-five dollars paid by him for the house and lot in Bridgeport to W. E. Hill, among other reasons because that matter is settled by the Supreme Court of Appeals in its decision in this cause. (6) The defendant J. B. Sandusky excepts to so much of said report as seeks to correct the settlements made by W. E. Hill before Commissioner Werninger, and to all of said report seeking to make other charges against him, said Sandusky, as surety for said Hill, not included in the report before the Supreme Court of Appeals when it handed down its opinion in this cause. (7) The defendant J. B. Sandusky excepts to so much of said report as reports that the M. E. Kester note was personal estate in the hands of J. B. Sandusky, and that he is chargeable with the same; and also, in that connection, to so much of said report as refuses to give him credit for the sum paid by him to Ella Kester for the support of the plaintiffs. (8) The defendant J. B. Sandusky

excepts to so much of said report as charges him with
compound interest, as surety, as that matter was before
the Supreme Court of Appeals, and it did not direct such
interest to be charged. And the said Sandusky should not
be charged with compound interest, if at all, after the de-
fendant Hill had left the State, and this defendant had
done all in his power to have him removed as guardian, and
that with knowledge and consent of the plaintiffs. Neith-
er should compound interest be charged for the year Hill
made prompt settlements before Werninger. Defendant
J. B. Sandusky also excepts to so much of said report as
charges him with compound interest on the M. E. Kester
note, because said note was not due until the —— day of
February, 1894, and a large part of it yet remains unpaid."
On the 28th of May the cause was heard upon the papers
theretofore read, the former orders made in the cause, the
said report of Commissioner M. M. Thompson, and the ex-
ceptions thereto, when the court overruled all of said de-
fendants' exceptions except the third, which referred to
the forty-nine dollars and sixty-six cents rent, etc., which
exception was sustained, and said item disallowed, and also
except, further, that part of the seventh exception relating
to the money paid by J. B. Sandusky to Ella Kester for the
support of the plaintiffs, which item of rents of forty-nine
dollars and sixty-six cents, and interest to May 11, 1897,
and the money paid for support as aforesaid, aggregated
on said May 11, 1897, the sum of four hundred and twenty-
five dollars and sixty-five cents, and that, after making said
deduction of four hundred and twenty-five dollars and six-
ty-five cents, there still remained due to plaintiffs, as fol-
lows, viz: to Cecil M. Kester eight hundred and six dollars
and ten cents, to Sadie B. Kester eight hundred and five dol-
lars and ninety-nine cents, to Hattie Kester eight hundred
and seven dollars and forty-six cents, and to William H.
Kester eight hundred and two dollars and ninety-nine cents,
by the defendants, W. E. Hill, J. B. Sandusky, and Hen-
ry C. Ross; and the report of Commissioner Thompson, as
modified and corrected by sustaining said exception 3 and
said portion of 7, was confirmed, and it was decreed that
said several sums be recovered against said three defend-
ants by said plaintiffs, respectively, with interest on said
sums from the 11th day of May, 1897, until paid. The de-

cree further ascertained from said report that the residue
of the proceeds of the real estate of plaintiffs after deduct-
ing the dower of Ella Kester, with which Guardian Hill
was chargeable, was one thousand, three hundred and fif-
ty-five dollars and seventy-eight cents, and that the pro-
ceeds of the house and lot in Bridgeport, sold by Hill to
J. B. Sandusky, was three hundred and sixty-five dollars,
and that said W. E. Hill, Edgar Hill, and J. B. Sandusky
were liable to plaintiffs for said sum of three hundred and
sixty-five dollars, and that defendants W. E. Hill and Edgar
Hill were liable to plaintiffs for nine hundred and ninety
dollars and seventy-eight cents, the residue of said proceeds
of said real estate after deducting said three hundred and
sixty-five dollars, the proceeds of said house and lot, and
rendered judgment in favor of plaintiffs against the defend-
ants named for said sums of three hundred and sixty-five
and nine hundred and ninety-eight dollars and seventy-eight
cents, respectively, with interest from May 11th, 1897, until
paid, all of said sums to be paid to John I. Alexander as
guardian of said plaintiffs, and with authority to said Alex-
ander to sue out executions therefor.   The decree further
granted leave to W. E. Hill and J. B. Sandusky, to deliver
up to said guardian Alexander the said M. E. Kester note,
for which equal credit should be given upon the said several
recoveries against them by the plaintiffs of eight hundred
and six dollars and ten cents, eight hundred and five dollars
and ninety-nine cents, eight hundred and seven dollars and
forty-six cents and eight hundred and two dollars and nine-
ty-nine cents, for the unpaid portion of the principal and
interest on said note at the time of such surrender.   From
which decree defendants W. E. Hill and J. B. Sandusky ap-
pealed and assigned as error  in permitting  the filing of
plaintiffs exceptions to the former report in the cause, after
said report had been  passed upon, and  in sustaining the
same, and in  referring the whole of the  matters in said
cause back to said commissioner and authorizing a re-state-
ment of the accounts of W. E. Hill as guardian.

It is insisted by appellants that "all matters contained
in Thompson's report had been considered and adjudicated
by this Court when the circuit court allowed these excep-
tions to be filed, including the very subjects and items men-
tioned in the exceptions, and that the time had passed for

filing and considering any exceptions to said report, inasmuch as the decree of the circuit court confirming these subjects and items, was not reversed by this court" in support of which proposition they cite *Sandy* v. *Randall*, 20 W. Va. 244, *Evans* v. *Shrover*, 22 W. Va. 581, and *Thompson* v. *Catlett*, 24 W. Va. 525. In the first case cited it is held that: "While a commissioner's report, if erroneous, may, in some cases, be objected to at the hearing, though no exception is filed to it, yet without such exception it cannot be objected to in an appellate court in relation to subjects which may be affected by extraneous evidence." *Evans* v. *Shroyer*, supra (Syl., point 2), is to the same effect; and *Thompson* v. *Catlett*, supra (Syl., point 4), holds that, "A commissioner's report, if erroneous upon the face thereof, may be objected to at the hearing, although not excepted to, but, unless excepted to, it cannot be impeached at the hearing by adult parties on grounds which may be affected by extraneous evidence; and, if such adult parties fail to except to the report, they will be presumed to have acquiesced in its correctness, not only as far as it settles the principles on which the account is stated, but also in regard to the sufficiency of the evidence on which it is founded." There is a clear distinction here drawn by the Court by implication between adult and infant defendants, the law making it the special duty of the courts to protect the interests of the infant. If no interests except those of adults had been involved, the contention of defendants would probably be tenable. It is further contended that (as in *Krise* v. *Ryan*, reported in 19 S. E. 783, where the Virginia court of appeals so held) "whatever is contained in the record in an appeal is supposed by the law to have been passed upon, and whatever is passed upon, or might have been passed upon, in the consideration of the record, is concluded and settled, and the lower court is precluded from a review of the defenses included in a former appeal." This might be applicable in a case where the appellate court apparently passed upon the whole case, and left nothing open. Such part of the case as was not mentioned or referred to would be presumed to have been passed upon; but in the case at bar, instead of remanding the case, and providing that the settlement of Guardian Hill's accounts should be corrected simply by eliminating from the account upon which his sureties in his general guardian

bond should be held liable the proceeds of the sale of realty which he had sold under decree of court, and, in which proceeding to sell he had given a special bond, as decided by this Court, the cause was remanded, among other things, "that proper decrees might be entered for the settlement of the accounts of said W. E. Hill as guardian," evidently intending that the circuit court should see that proper settlements were made. So that, when the cause was again in the circuit court, the report and settlement were under the consideration of the court, except in so far as the decision of this Court required the elimination of the proceeds of real estate from the general settlement, and a separate settlement thereof.

Defendants also insist that, under the rulings of this Court in *Kester* v. *Lyon*, 40 W. Va. 161, (20 S. E. 933,) *Chapman's Adm's* v. *McMillan*, 27 W. Va. 220, and *Keck* v. *Allender*, 37 W. Va. 201, (16 S. E. 520,) plaintiffs having failed to file the exceptions before the cause was taken to the Supreme Court, they then admitted that the portions of the report to which they file their exceptions were correct, and it was too late for them to file such exceptions. The plaintiffs, being infants, could admit nothing, and, the report being again before the court for consideration for the purpose, among other things, of settling the accounts of said Hill, guardian, it could, in the exercise of a sound discretion, receive and entertain further exceptions to the report. See 2 Bart. Ch. Prac. p. 653. Section 7, chapter 8, Acts 1895, provides that "any party may except to such report at the first term of the court next after the term to which the same is filed, or by leave of the court at any subsequent term thereof." So the only question is whether the report was so before the court, after the return of the cause to it, that it had the right to entertain an exception thereto. I think it has been shown that it was as much under its control and in its power as before the appeal was taken. As to the fourth exception so taken to said report by the plaintiffs, and sustained by the court, which exception includes an item of credit for commissions of one hundred and sixty dollars and forty cents, or forty dollars and ten cents against each of said four plaintiffs, section 7, c. 87, Code, provides that "any such fiduciary who shall wholly fail to lay before such commissioner of accounts a statement of receipts for any year

within six months after its expiration, shall have no compensation whatever for his services during the said year; and though a statement be laid before the commissioner, yet if such fiduciary be found chargeable for that year with any money not embraced in the said statement, he shall have no commission on such money unless allowed by the court." In response to the decree of reference requiring Commissioner Thompson to report especially upon the item of credit allowed said guardian in his settlements made before A. Werninger, as shown by certain exhibits, the commissioner reports that he disallows the said credits for commission on the moneys reported as received in Commissioner Werninger's settlement "because, in the opinion of the commissioner, said guardian did not make his settlements in the way and manner provided by law, and did not comply with the requirements of the law in making the same, and is therefore not entitled to any commission on the receipts of the estate." It is not disputed that Guardian Hill made his settlements promptly every year when these moneys were coming to his hands, and the moneys upon which he was allowed the commissions were moneys that he duly reported; and there is nothing showing that he was found chargeable with moneys not embraced in his statement, upon which he would not be entitled to commission; but by the report and decree he is deprived of commissions to which he is entitled, and which should have been allowed, and to that extent the report should have been modified.

Fourth assignment: "In charging Sandusky, as surety, with compound interest, especially after defendant Hill had left the state, and said Sandusky, with the knowledge and consent of the plaintiffs, had done all in his power to have him removed as guardian, and also for the years Hill made prompt settlements before Commissioner Werninger." The charging of compound interest is a matter controlled by the provisions of chapter 82, Code, as is also the expenditure of the principal of his estate, or any part of it, which answers the fifth assignment, "In refusing to give said Sandusky credit for full amount paid Ella Kester for the support of the plaintiffs."

Sixth assignment: That it was error to charge Sandusky compound interest on M. E. Kester's note. Under the decree of the court, defendants Hill and Sandusky are given leave

to deliver over to Guardian Alexander the Kester note, for which they will receive credit on the several amounts recovered against them by the plaintiffs to the amount of the principal of said note yet unpaid, and the amount of interest charged on such unpaid principal in the sums so recovered against them. Appellants, in their brief, say that: "Under the sweeping decree of the circuit court, entered after the cause came back here, the plaintiffs amend their hand, open up the matter of the real estate, try to make Sandusky, as one of the sureties of Hill on his guardian's bond, liable for a lot, valued at three hundred and sixty-five dollars, Hill sold him as guardian under the decree of the circuit court, and to open up anew all questions as to real estate, as well as all other matters connected with the cause.   *   *   *   If this is permitted, then there can be no end to litigation. This is a matter that could have been raised at the former hearing. All the facts were then, as now, in the knowledge of the parties who are conducting this litigation in the names of the plaintiffs. The fact that this lot was purchased by Sandusky was before the court on the first appeal, it was reported on by the commissioner in his former report, and listed by him in that report as part of the real estate sold by Hill as guardian under the decree of the circuit court.   *   *   *   If there is anything in their present contention about this lot, are they not estopped now from charging it to the sureties of Hill on his guardian's bond? Is not that matter, as well as all questions as to the real estate, settled by the decision of this court?" The facts in the transaction of the sale of the Bridgeport lot for three hundred and sixty-five dollars by Guardian Hill to Sandusky do not appear from the record to have been known until brought to light by Mr. Sandusky himself upon the witness stand, whereby it appears that he did not pay the money for it, but accepted it on account of a debt due from Dr. W. E. Hill individually to Sandusky. While Sandusky is not liable on the bond of Hill given in the proceeding to sell the real estate by accepting this property of plaintiffs in the way he did, he is liable to them for the price of the property, and, being so liable, plaintiffs will not be held to depend solely upon the insolvent bond of their guardian, Hill, given by him in the proceeding to sell real estate; and, being so liable to plaintiffs, while not as surety of W. E. Hill, he

is personally liable, and he cannot complain that the judgment stands against him in connection with W. E. Hill and his bondsman, Edgar Hill, who are likewise liable for the same. It is true, plaintiffs knew of the sale of the lot by Hill to Sandusky, but the presumption is they supposed—as they had a right to suppose—that the transaction was *bona fide*, and that Sandusky paid the guardian the money, in which case Hill and his sureties on the real estate bond alone would have been liable.

The decree of the circuit court should be modified by allowing a credit as of May 11, 1897, on each of the sums of eight hundred and six dollars and six cents, eight hundred and five dollars and ninety-nine cents, eight hundred and seven dollars and forty-six cents, and eight hundred and two dollars and ninety-nine cents, recovered by the plaintiffs, respectively against Hill, Sandusky, and Ross, of forty dollars and ten cents, with compound interest thereon from the date of the allowance thereof by Commissioner Werninger as commissions on receipts to W. E. Hill as guardian up to the 11th day of May, 1897. With such modification, the said decree is affirmed, with costs of the appeal to appellants, as the parties substantially prevailing.

*Modified and Affirmed.*