EDITH C. SPOTTS, JAMES B. CAMPBELL, FRANK W. CAMPBELL, HELEN C. MCGINNIS, ROBERT EAKIN CAMPBELL, (Plaintiffs), v. BAYLOR M. SPOTTS and FRANK W. CAMPBELL, Trustees, Under the Will of Robert Campbell, B. M. SPOTTS, JEAN LAIRD STEWART, ELLSWORTH STEWART, KATHERINE EDITH STEWART, DORRIS JEAN STEWART, MARGARET E. STEPHENS, ALEXANDER F. STEPHENS, KATHERINE ANN SPOTTS, ELLA CAMPBELL, ELIZABETH HAMMER, EDITH CONNELL, JOHN H. CONNELL, JOHN D. CONNELL, SARAH RUTH CAMPBELL, SABRA E. CAMPBELL, LILLIAN C. DENNIS, CHARLES F. DENNIS, JR., EVERETT H. DENNIS, FRANCES G. CAMPBELL, ROBERT L. CAMPBELL, EVELYN S. CAMPBELL, LETETIA CAMPBELL, JEAN CAMPBELL, ROBERT F. CAMPBELL KARL MCGINNIS, ROBERT C. MCGINNIS and JAMES W. CAMPBELL (Defendants), ROBERT L. CAMPBELL, Plaintiff in Error.—55 S. W. (2d) 977.

Division One, December 20, 1932.

918

*Wm. D. Bush, Wilbur F. Hall* and *Ernest D. Martin* for plaintiff in error.

*Ralph H. Duggins* and *Perry S. Rader* for defendant in error.

HYDE, C.—This is a writ of error to the Circuit Court of Saline County. Suit was commenced there in 1923, and a decree was entered November 8, 1923. Plaintiff in error was a minor at that time and applied for this writ in 1929, under the provisions of Section 1036, Revised Statutes 1929, within three years after the removal of his disability. The original petition (which is printed in the abstract as though part of the record proper) set out the will of Robert Campbell, stated that the executors appointed therein had made final settlement and had been discharged and that they had been appointed, by the circuit court, trustees under the will of Robert Campbell. It alleged the relationship of the parties, who were children, grandchildren, or great-grandchildren of Robert Campbell, and the correct description of the land referred to in the will and stated that the defendants claimed some title or interest in the real estate described. The prayer of the petition was that the court "hear and finally determine any and all rights, . . . concerning or affecting said real estate."

Thereafter, an amended petition was filed which stated that Robert Campbell died February 23, 1915, and left surviving him as his only heirs his widow and the plaintiffs, who were his children or children of his deceased son; that the will of Robert Campbell was admitted to probate in Saline County March 4, 1915; that his widow died April 16, 1922; that the defendants (except the trustees under the will) were the children and grandchildren of plaintiffs, the relationship of each being fully set out; and that the will gave and devised to each of the plaintiffs certain lands (which were fully described) "in fee simple absolute, subject to the encumbrance in favor of his said wife during her natural life." The petition then alleged:

"Plaintiffs state that prior to the execution of his said Last Will and Testament, and prior to his marriage with the said Clara Shier, the said Robert Campbell entered into a marriage contract and settlement with said Clara Shier by which he agreed to pay her, and she agreed to accept, in lieu of dower in his estate, if she should outlive him, the sum of one hundred dollars per month and the use of his dwelling house in Marshall, Missouri, during her natural life; that

by his said Last Will and Testament he charged all the aforesaid real estate, individually and as a whole, with the obligations of said marriage settlement; that by his said will he empowered his executors, and his trustees to be thereinafter named, to hold and control all the aforesaid real estate respectively devised to plaintiffs in fee simple, and laid on them the duty to rent said properties, and out of the rents collected to pay to his said wife, the said Clara Shier Campbell, the sum of one hundred dollars per month, and to pay the taxes and insurance and expenses of necessary repairs on his said dwelling house, during her natural life, and specifically declared therein that such payments were to be in lieu of her dower in his estate, and specifically directed that the balance of said rents, after the taxes, insurance and expenses of necessary improvements on the aforesaid real estate were paid, should be turned over to these plaintiffs, respectively for their support; that his said widow, the said Clara Shier Campbell, accepted the provisions thus made for her maintenance and support, and at no time after the testator's death claimed any greater or other interest in his estate than that given her by said Will; that the said testator appointed Baylor M. Spotts and Frank W. Campbell executors of his said Will, and they qualified as such, and fully administered his estate and made final settlement thereof; that said testator did not by his said Will appoint or nominate trustees to carry out the provisions of his Will in favor of his said wife, but after the close of the administration of his estate by said executors, as aforesaid, the Circuit Court of Saline County, Missouri, appointed the defendants Baylor M. Spotts and Frank W. Campbell, Trustees under said Will, and they have ever since acted as such Trustees, and as such Trustees faithfully and fully carried out the provisions of said Will in favor of testator's said wife, and regularly paid her, during her natural life, the sum of one hundred dollars per month, and paid all the taxes and insurance and the expenses of necessary repairs on said dwelling house; that testator's said wife, the said Clara Shier Campbell, is now deceased, and all the purposes and objects which actuated him in encumbering the aforesaid tracts of real estate with the obligations of his said marriage settlement have been fully met and performed; that notwithstanding the testator's objects and purposes in giving to said Trustees control of the said real estate and authorizing them to hold it during the natural life of his said wife have been fully accomplished and performed, the said Trustees still retain said tracts of real estate and all of them in their possession, and are collecting the rents therefrom, and are wrongfully withholding the possession thereof from the plaintiffs on the alleged theory that said Will did not designate any certain or ascertainable period when said Trust was to determine and cease.

"Plaintiffs state that said Last Will and Testament did not devise and give the aforesaid real estate to Trustees to be held for the use of the bodily heirs of plaintiffs, and if such was its effect that part of it is void as violative of the rule against perpetuities; but that the clear purpose and intention of said testator as manifested by his said Will were to vest the fee simple title of the above tracts of land in the plaintiffs, respectively, and to subject them to said charge or encumbrance in favor of his said wife during her natural life, and that he did not by said Will intend to give or devise, and did not give or devise, any of said lands to defendants or any of them, or to Trustees for their use and benefit, but only meant and intended that said Trustees should have such use and control over said lands as would enable them, fully and without interference, to perform the obligations of his said marriage settlement; and said encumbrance having been fully discharged and all the objects thereof having been fully met and performed, said Trustees should now be discharged, and the plaintiffs adjudged to be entitled to the possession of all said properties, free from said trusteeship, and free from any right or estate therein, present or prospective, of the defendants or any of them."

The petition further alleged that the defendants claimed some right, title, interest or estate, in the real estate described, under the will of Robert Campbell and that such claim constitutes a cloud upon the title of plaintiffs. The prayer of the petition was "that the court construe the will of Robert Campbell and finally determine any or all rights, claims, interests, estates and title whatsoever of the plaintiffs and of the defendants."

The trustees filed an answer which they stated:

"These defendants aver that said testator by his said last will and testament gave and devised all the real estate in said amended petition describd, to trustees, hereinafter to be named, for the benefit and use of his wife and the plaintiffs herein, designated there the specific tracts given and devised to each of the plaintiffs, severally and respectively, but given and devising to his said wife, or to trustees for her, no particular tract or parcel of real estate, but 'give my said trustees or administrators full power and authority to hold, manage and control said properties, to rent the same and collect the proceeds, pay the taxes and keep up the improvements, insurance, etc., and then use the balance for the support of my said wife and grandchildren and their families.' "

They further set out in their answer the part of the will relating to the marriage settlement between Robert Campbell and his wife and how it was to be carried out; that they were given control and management of the land by the will as trustees of an active trust; and that "the provisions of said will are uncertain and indefinite and

make indefinite and uncertain the nature, character and duration of said trust,'' in the following respects:

''That it is uncertain whether said trust was to determine and cease upon the death of testator's said wife or to continue indefinitely after her death.

''That said will designates no certain or ascertainable time when said trust is to determine and cease.

''That the words of said will that the balance of the proceeds of the rent arising from said real estate shall be used for the support of testator's wife, children and grandchildren and their families, by the use of the words 'and their families,' create an uncertainty, and make it indefinite when said trust shall determine. . . .

''Giving testator's trustees full power and authority to hold, manage and control the said properties, to rent the same and collect the proceeds, pay the taxes, keep up the improvements and insurance, and use the balance for his wife and children and grandchildren and their families and . . . authorizing said trustees to collect only a 'sufficient' amount from said properties to pay his said wife one hundred dollars per month and to pay the taxes, insurance and the expenses of necessary repairs on the dwelling house—are conflicting. . . .

''That uncertainty as to when such trust shall determine is further manifested by the frequent use of the word 'entailed' in the last clause of said will hereinbefore quoted . . . and it is uncertain from the use of said word whether the testator in fact intended to entail said properties, or only use said word 'entailed' in a descriptive sense and as a classifying term to distinguish it from other property devised. . . .

''That there are other words and clauses in said will which indicate that it was the testator's intention to entail all said real estate in perpetuity.''

The adult defendants filed an answer stating that whatever interest or estate they have is under the will of Robert Campbell and prayed the court to ascertain and determine it. The guardian *ad litem* appointed for the minor defendants filed an answer denying that plaintiffs owned the real estate or any part of it in fee simple and alleged:

''Said testator devised the legal title of said lands to trustees to be held by them for the use and benefit of plaintiffs, respectively, during their natural lives, and upon their respective deaths said legal title will vest in their then bodily heirs.''

This answer also prayed that the court ascertain and determine the title of plaintiffs and defendants in the land. The regular judge disqualified and the case was tried by the judge of another judicial

circuit as special judge. The court found, on plaintiffs' theory of construction of the will, that plaintiffs were the owners of the land described in fee simple:

"That the said Clara Sheir Campbell, the wife of said Robert Campbell, who survived him, is now dead, and that all the obligations of said marriage settlement have been fully performed, and that it was the intention of testator that when said obligations were fully met and performed said trust should terminate, and that the properties charged with the support and maintenance of his said wife during her natural life, should be returned to and enjoyed by his children, in severalty free from said encumbrance."

In accordance with its findings, the court decreed that each of the plaintiffs were the owners in fee simple of the specifically described lands; that the defendants had no interest therein; and that the trust had terminated. The trustees were required to make final settlement and distribute the funds in their hands. There was no motion for new trial filed nor appeal taken on behalf of any party.

On behalf of the plaintiff in error it is contended that the court incorrectly construed the will, and that this amounted to a wanton taking of the minor defendants' property without due process of law. Defendants in error, who are represented here, contend that the will was correctly construed but that only the record proper is here for review; that the will is not a part of the record proper; and that, since there is no error apparent on the record proper, the judgment must be affirmed.

In determining this matter it is necessary to consider the function of a writ of error in our appellate practice. Our statutes provide two methods of obtaining a review by an appellate court; by appeal (which was not a common-law remedy), made during the term at which the judgment appealed from was rendered (see Secs. 1018-1033, R. S. 1929); and by writ of error sued out within the time required by Section 1036, Revised Statutes 1929. [See Secs. 1034-1058, R. S. 1929.] "The suing out of a writ of error is, at common law and generally under the statutes, the commencement of a new suit to annul and set aside the judgment of the court below, and not a continuation of the suit below to which it relates." [3 C. J. 304, sec. 12; Trust Co. v. Traction Co., 270 Mo. 487, 194 S. W. 52; Moberly v. Lotter, 266 Mo. 457, 181 S. W. 991; Turner v. Edmonston, 210 Mo. 411, 109 S. W. 33; St. Louis v. Butler, 201 Mo. 396, 99 S. W. 1092; Macklin v. Allenberg, 100 Mo. 337, 13 S. W. 350.]

Originally, under the common law, a writ of error only reached errors apparent on the record. To reach errors in the orders and decision of the court in the progress of the trial, which did not appear in the record, the statute of 13 Edward I was passed, creating the bill of exceptions by which such matters could be brought

into the record so that they might be reviewed on writ of error. [3 C. J. 300-314; 2 R. C. L. 27, secs. 3, 140, sec. 113; Powell on Appellate Proceedings, 46.] Of course, the questions to be presented by the bill of exceptions must have been raised in the lower court or they will not be considered by the appellate court. "Otherwise, if an objection not raised below could be raised in the appellate court there would be no assurance of any end to the litigation, as new objections could continuously be raised on successive appeals." [2 R. C. L. 72, sec. 52.] A bill of exceptions is provided for, in our practice, by Sections 1008-1017, Revised Statutes 1929.

However, we go further and require not only that exceptions be taken in the trial court but also that they shall be passed upon there. Section 1061, Revised Statutes 1929 provides: "No exceptions shall be taken in an appeal or writ of error to any proceedings in the circuit court, except such as shall have been expressly decided by such court." Therefore, before an appellant or plaintiff in error can have a review of any matter of exception on the trial, he must not only make his objections and save his exceptions at the time they occur, but he must also bring them again to the court's attention by a motion for new trial. In case of failure to do so, the review will be limited to the record proper. [Crawford v. Amusement Syndicate Co., 37 S. W. (2d) 581; Dougherty v. Manhattan Rubber Mfg. Co., 325 Mo. 656, 29 S. W. (2d) 126; Syz v. Milk Wagon Drivers' Union, 323 Mo. 130, 18 S. W. (2d) 441; Wayland v. Kansas City, 321 Mo. 654, 12 S. W. (2d) 438; Arcadia Timber Co. v. Harris, 285 S. W. 428; Warren v. Zinc Co., 255 Mo. 138, 164 S. W. 208; Blanchard v. Dorman, 236 Mo. 416, 139 S. W. 395.] Under our Code the same rule applies to equitable actions. [Primeau v. Primeau, 317 Mo. 828, 297 S. W. 382; Berry v. Rood, 209 Mo. 662, 108 S. W. 22; Martin v. Lutkewitte, 50 Mo. 58; Investment Security Co. v. Williams, 143 Mo. App. 324, 126 S. W. 968; Keaton v. Keaton, 74 Mo. App. 172.] The purpose of this requirement is to afford the trial court an opportunity to correct its own errors. [Syz v. Milk Wagon Drivers' Union, 323 Mo. 130, 18 S. W. (2d) 441, 443; Leahy v. Merchantile Trust Co., 296 Mo. 561, 585, 247 S. W. 396, 401; Coffey v. City of Carthage, 200 Mo. 616, 629, 98 S. W. 562, 566.] By requiring a complaining party to state to the trial court what his grounds of complaint are, error may be remedied without the delay or expense incident to appellate review. This was not an essential requirement at common law as to all matters of exception. [3 C. J. 961-962, sec. 849; 2 R. C. L. 98, sec. 72.] But it was well settled, in most jurisdictions at least, that a motion for a new trial, presenting the ground to the trial court, was necessary to a review of the question of the sufficiency of the evidence to support the verdict or judgment. [3 C. J. 985-988, secs. 906-908, 2 R. C. L. 99, sec.

72; Powell on Appellate Proceedings, 230; Elliotts Appellate Practice, 778, secs. 830, 831, 789, sec. 854.] Upon such grounds, it was, of course, necessary for appellate review that the bill of exceptions contain all the evidence. [4 C. J. 196, sec. 1800, 2 R. C. L. 135, sec. 109.]

██ ██ In this case, the whole claim of plaintiff in error is that the court incorrectly construed the will. The assignments of error all amount to the contention that the decree of the court is against the evidence and contrary to the law applicable under the evidence. There was no motion for a new trial filed, and therefore the review, unless a different rule is applicable to infant defendants, is limited to the record proper. The will is not shown by the record proper. A petition abandoned, upon the filing of an amended petition is not part of the record proper. It can only become a part of the record, thereafter, by being offered in evidence and preserved by bill of exceptions. [Von Eime v. Fuchs, 320 Mo. 746, 8 S. W. (2d) 824; Boyd v. St. Louis Brewing Assn., 318 Mo. 1206, 5 S. W. (2d) 46; Wood v. Wells, 270 S. W. 332; Collins v. Andriano, 264 Mo. 475, 175 S. W. 194; Lyons v. National Surety Co., 243 Mo. 607, 147 S. W. 778; Forrister v. Sullivan, 231 Mo. 345, 132 S. W. 722.] The bystanders' bill in the abstract, in which there is a call for the will to be copied, could not aid plaintiff in error in obtaining a review of anything but the record proper, since it fails to show any motion for new trial. Nor does it purport to contain all of the evidence. From the decree it is apparent that the marriage settlement between Robert Campbell and his wife was in evidence. It is not set out or alluded to in this bill. As to what other evidence there may have been, we are left to surmise and conjecture. Furthermore, it may be noted that the bill does not show that any exception whatever was saved by plaintiff in error; that the judge who tried the case was ever presented this or any bill of exceptions and refused to sign it; or that the bystanders who signed it were present at the trial. The judgment here is responsive to the pleadings and we hold that no error appears on the record proper.

██ Plaintiff in error, however, contends that the provisions of our Code in regard to taking exceptions and presenting them to the trial court by motion for new trial do not apply to minor defendants. He says that all matters which could be excepted to are deemed to be saved on behalf of minor defendants and that a guardian *ad litem* could not waive them by failing to file a motion for new trial. As to this proposition, it is said in 2 Ruling Case Law, 84, section 59;

"On the theory that the law jealously guards the rights of infants, that they are the wards of the court, and are not to be prejudiced by any act or default of their guardian *ad litem,* the court being bound to protect their interest notwithstanding the failure of their guardian to do so, the better rule seems to be that an appellate

court will protect the rights of infants, although no objection is made in the trial court or exception taken. In some jurisdictions, however, the rule seems to obtain that an infant is held to the same rules as an adult, and that failure to object or to preserve an exception in the trial court will preclude the infant from complaining of the error in the appellate court, and this is especially true where counsel acted in entire good faith without fraud or collusion.''

In a note in Annotated Cases 1913B, 443A, a great many cases are reviewed and the same conclusion is reached. However, the rule is not as far reaching as the general language would seem to indicate. It is held that where an infant by next friend or guardian *ad litem* institutes an action as plaintiff he ''is as much bound by a judgment in his own action as if of full age; and this is general unless gross laches or fraud and collusion appear in the *prochein ami;* then the infant might open it by new bill.'' [Kingsbury v. Buckner, 134 U. S. 650, 10 Sup. Ct. 638, 33 L. Ed. 1047; Byrnes v. Butte Brewing Co. (Mont.), 119 Pac. 788.] It is also to be noted that some of the states, in which the cases cited in support of the rule stated in 2 Ruling Case Law, 84, were decided, did not have code provisions similar to ours and that in others a motion for a new trial, presenting to the trial court the errors alleged to have been committed, is not a necessary requirement to an appellate review of such errors. Furthermore, an examination of the cases cited in support of this rule reveals that most of them are cases (many of them in equity) where an appeal was taken by adult parties which brought up the whole case, and an erroneous judgment as to certain matters concerning the infant parties was apparent from the record before the appellate court. They uniformly hold that, even though no objection was made and exception taken to or no contention was made about such matters by appeal on behalf of the infant party, the appellate court would correct these clearly apparent errors by directing the entering of such a decree as should have been entered. [Tillar v. Cleveland (Ark.), 1 S. W. 516; Kempner v. Dooley (Ark.), 31 S. W. 145; Parker v. Safford (Fla.), 37 So. 567; Barnard v. Barnard (Ill.), 8 N. E. 320 (incompetent evidence in equity case excluded on appeal although no objection on behalf of infant party); Johnston v. Johnston (Ill.), 27 N. E. 930 (incompetent evidence likewise excluded); Jespersen v. Mech (Ill.), 72 N. E. 1114; Spradlin v. Stanley's Admr. (Ky.), 99 S. W. 965; Berrett v. Oliver (Md.), 7 Gill and J. 191; Sanford v. Granger (N. Y.), 12 Barb. 392; Boerum v. Schenck, 41 N. Y. 182; Glade Coal Mining Co. v. Harris (W. Va.), 63 S. W. 873; Kester v. Hill (W. Va.), 34 S. E. 798.]

The case of Glade Coal Mining Co. v. Harris (W. Va.), 63 S. E. 873, is fairly illustrative of these decisions. It was an action in equity against both adult and infant defendants for specific execution of

an option contract against them as grantees and heirs of the maker. The adult defendants raised the question of whether the conveyance to them was a deed or a will.

"The guardian *ad litem,* on behalf of said infant defendants, filed a formal answer to the bill, and also to the cross-bill answers of their codefendants, to which no replications were filed, alleging that he had no personal knowledge of the matters and things set forth therein; but, being advised that his wards had material interests therein, he admitted nothing, but, on the contrary, called for full proof as to each and every allegation thereof, which affected, or in any wise pertained to the interests of his wards, which interests he tenderly committed to the mercies of the court."

Plaintiff relied upon certain admissions in the adult defendants' answers and had no other evidence sustaining its bill. From a decree enforcing the contract, adult defendants appealed. The court being of the opinion that plaintiff's evidence was insufficient said:

"The question remains: What shall we do with the decree against the infant defendants? The admissions in the answer of Priscilla C. and Ira Harris in no way bind the infants. If binding on Mrs. Harris, they effect her life estate only, giving plaintiffs no right to specific execution of the contract for coal. This leaves the plaintiff without evidence to support its bill, and clearly not entitled to a decree against the infant defendants. We do not find that the question now for .decision has heretofore been directly decided by this court, but in other jurisdictions it has, and held that the rule that it is the duty of the courts to protect the interests of infant litigants applies to an appellate court into which the case is brought as well as to the trial court, and hence that on appeal an infant will be given the benefit of every defense of which he could have availed himself, or which might have been interposed for him in the trial court, and that where the record shows error, as to a minor defendant, the judgment will be reversed, though there is no appeal on his part, it being the duty of the chancellor, as the guardian of infants, to protect their rights."

The court ordered that the judgment be set aside and that plaintiff's bill be dismissed. This result would properly be reached under our own procedure in ̃equity. [See Revely v. Skinner, 33 Mo. ̃98.] We hear an equity case *de novo* on appeal and where the trial court's finding and decree is not sustained by the law and the evidence, this court will proceed to make its own finding and enter such judgment as equity and justice require. [Friedel ·v. Bailey, 44 S. W. (2d) 9, and cases cited.] In order to do this, it is necessary for the court to have a bill of exceptions containing the entire evidence. [See Rule 7 of the Supreme Court.] However, entering a judgment for infant parties which the law and the evidence requires in an

equity case, or even considering objections made and exceptions saved to incorrect rulings on behalf of infant parties in a law case (or to put it another way, considering only competent legal evidence in determining rights of infant parties regardless of whether objections were made) where the entire evidence is before the appellate court on another party's appeal, is an entirely different matter from trying a case *de novo* in an appellate court without any appeal by any party, without any motion for new trial or bill of exceptions and without the evidence upon which the trial court decided the case.

■■ We have found no case which holds that an appellate court can, when no bill of exceptions is in the record before it, consider matters which could only come before it by being preserved by a bill of exceptions. To sustain the contention of plaintiff in error, it would not only be necessary for this court to go outside of the record proper and drag in, by the ears, the will, which was in evidence before the trial court, but we would also have to make for him a bill of exceptions containing all the other evidence before the trial court. It is apparent from the pleadings, containing the several contentions about the meaning of the will and the excerpts from the will set out, that it was ambiguous and conflicting in many respects. If it was not possible to determine its meaning from its provisions, other evidence was admissible to explain it and to aid in determining the intent of the testator. [Bishop v. Broyles, 324 Mo. 69, 22 S. W. (2d) 790; Bond v. Riley, 317 Mo. 594, 296 S. W. 401; McCoy v. Bradbury, 290 Mo. 650, 235 S. W. 1047; Griffith v. Witten, 252 Mo. 627, 161 S. W. 708; McMahan v. Hubbard, 217 Mo. 624, 118 S. W. 481.] The decree shows that other evidence was before the trial court. How we are to get this evidence plaintiff in error does not suggest. Furthermore, under his theory we are not only expected to make up for him such a transcript of the evidence (with proper objections and exceptions shown therein) but we are also to manufacture a motion for a new trial complete with all conceivable grounds of complaint against the rulings of the trial court. We do not think that our Code permits such procedure.

■ It is true that in any proceeding against them infants are wards of the court and their rights are to be jealously guarded, but our statutes provide a method for doing this. In order to protect their rights our Code provides: "After the commencement of a suit against an infant defendant, and the service of process upon him, the suit shall not be prosecuted any further until a guardian for such infant be appointed." [Sec. 716, R. S. 1929.] It also provides that the appointment shall be made by the judge of the court in which the suit is pending and that the infant or his relatives may have a voice in such appointment. [Secs. 717, 718, R. S. 1929.] The duty of the guardian *ad litem* so appointed is to defend the suit and he cannot

admit anything or waive anything which goes to sustain the adverse party's claim. [Revely v. Skinner, 33 Mo. 98; McClure v. Farthing, 51 Mo. 109; Collins v. Trotter, 81 Mo. 275; McMurtry v. Fairley, 194 Mo. 502, 91 S. W. 902; Scott v. Royton, 223 Mo. 568, 123 S. W. 454.] This court has clearly stated that the appointment of a guardian *ad litem* for an infant defendant is not a bare technicality and that the office does not involve only perfunctory or shadowy duties, saying:

"This guardian is to do for him what with riper judgment he would do for himself; he is to appear for him in his proper person, employ competent attorneys, and counsel to prepare and plead his cause; he is to collect testimony, summon witnesses, and at the trial to afford such aid to his counsel as may be necessary in unexpected difficulties. It is only by exercising that attention and vigilance in the cause of the minor, which he would exert in his own, that he fairly discharges his duty. When all this has been done, everything in point of privilege has been secured to the infant which the law contemplates, or justice demands. It is something more than a mere technical defense, which is required by the guardian; for these he might furnish, and yet abandon the essential interests of his ward, by coming in at the return of the writ and entering a plea, and afterwards wholly neglecting the cause." [Reineman v. Larking, 222 Mo. 156, 121 S. W. 307; see, also, Crawford v. Amusement Syndicate Co., 37 S. W. (2d) 581.]

A guardian *ad litem* is an officer of the court and subject to its control. It is the obligation of the trial judge to see that he performs his duties. For personal misconduct costs of the suit may be charged against him. [Sec. 719, R. S. 1929.] Infant parties also have three years after coming of age in which to have corrected, by writ of error, any error shown by the record. [Sec. 1036, R. S. 1929.] It is evident that the Legislature, by providing this procedure, intended to establish ample means by which the rights of infants could be safeguarded. But they also had another purpose in view, that is, that controversies be settled. [See Sec. 958, R. S. 1929.] It is especially a matter of public interest that land titles be settled. If it were not possible to bind infants by court decrees no matters could ever be finally adjudicated until all parties, who might be interested, arrived at legal age. If a purchaser of real estate finds upon examination of the title, a construction of an instrument affecting it by a judicial decree which is responsive to the pleadings and no error is apparent on the record, he ought to be entitled to rely upon it. If this court should adopt the procedure, contended for by plaintiff in error, of years later adding something to the record that was never there, such as a bill of exceptions with a motion for a new trial when there was none, we think the mischief which would result would be greater than that which may result from the possibility that error, which cannot be cor-

rected, may enter into judgments against infant defendants by reason of the ignorance or negligence of a guardian *ad litem*. Of course, where there is fraud and collusion entering into the procurement of the judgment, infant defendants have a remedy, at any time within the statutory period of limitations, by a suit in equity to set it aside. [Krashin v. Grizzard, 326 Mo. 606, 31 S. W. (2d) 984; Dorrance v. Dorrance, 242 Mo. 625, 148 S. W. 94; Davidson v. Davidson Real Estate & Inv. Co., 226 Mo. 1, 125 S. W. 1143; Howard v. Scott, 225 Mo. 685, 125 S. W. 1158; McClanahan v. West, 100 Mo. 309, 13 S. W. 674; Bresnehan v. Price, 57 Mo. 422.]

We certainly cannot here presume fraud, negligence, inattention to duties or any other improper action on the part of either the guardian *ad litem* or the court. The presumption is the other way. [Waterman v. Chicago Bridge & Iron Works, 328 Mo. 688, 41 S. W. (2d) 575; White v. Hoffman, 331 Mo. 115, 52 S. W. (2d) 830; Garber v. Mo. Pac. Ry. Co., 210 S. W. 377; Interstate Ry. Co. v. M., R. & C. Railroad, 251 Mo. 707, 158 S. W. 349.] Here the record shows a comprehensive answer filed by the guardian *ad litem*, of plaintiff in error and the other infant defendants, setting up the very claim concerning the construction of the will which he is now asserting. The decree shows that this contention was considered, because the court finds that if such a meaning was intended it would, in view of the indeterminable trust connected with it, be in violation of the rule against perpetuities. The plaintiffs in the case were all of the beneficiaries of the will of Robert Campbell (his children or children of his deceased son); the defendants were the children and grandchildren of the plaintiffs. Many of them were of legal age. Some, even, were married and had children of their own. The husbands of these defendants were made defendants. They were represented by attorneys who filed answer for them. Not one of these adult defendants appealed or filed a motion for a new trial. Collusion of all of them to defraud their own children, brothers or sisters (and themselves?), would be unusual to say the least. At any rate, if there was such fraud, plaintiff in error has a plain way to obtain relief.

Furthermore, while those who were parties are doubtless bound by the decree, yet if the named beneficiaries of the will of Robert Campbell had only a life estate and their bodily heirs were entitled to take the remainder, it may be that, at the death of the named beneficiaries, their bodily heirs will not be the defendants in this case. A man does not have heirs (bodily or otherwise) until he dies. [29 C. J. 290, sec. 6.] Whether plaintiff in error will be in that class remains to be seen. It may be that some of the defendants will die before their parents and that persons not in being, at the time of the decree herein, may answer the description of such bodily heirs. What the rights of such persons would be we are not now called upon to determine.

Since the decree in this case is within the scope of the pleadings and no error appears in the record proper, the judgment of the trial court is affirmed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.