**LOGAN–MOORE LUMBER COMPANY, a corporation, Plaintiff-Respondent,**

v.

**Angelo MADDI, Defendant-Appellant.**

**No. 22899.**

Kansas City Court of Appeals.
Missouri.

May 4, 1959.

R. W. Hedrick, Henry Arthur, Kansas City, for appellant.

George K. Brasher, Guy M. Boyer, Kansas City, for respondent.

CAVE, Presiding Judge.

This is a suit on an account for certain building materials which, it is alleged, were sold and delivered to the defendant. The cause was tried to the court without a jury and resulted in judgment for the plaintiff in the amount of $1,835.20, and defendant perfected his appeal.

There is no dispute about the materials sold or the amount of the charges therefor. The contested issue before the trial court and on appeal is whether the defendant is liable on the account.

Mr. Prelogar testified that the plaintiff was a lumber corporation with a place of

business at Raytown, Missouri; that he had been plaintiff's manager at that plant since 1941; that on December 21, 1951, defendant Angelo Maddi came into his office with a Mr. E. L. Williams; that Maddi stated to him that Williams was going to be his (Maddi's) operating man at the Rock Springs Tavern, located at 4435 Raytown Road; that he, Maddi, was going to do some remodelling of the tavern and would need some building materials, such as lumber, shingles, and insulation; that the materials should be charged to Maddi, whether ordered by Williams or by Maddi himself; that they discussed the kind of material Maddi wanted and on that day an order was given for certain material totalling $687.98. The various items were listed on plaintiff's Exhibits 1 and 2, which were order blanks and included the following: "Sold to Angelo Maddi, 4435 Raytown Road (Rock Springs)". During the following two months, other material was delivered to the same address as shown by itemized accounts, and charged to defendant Maddi. Most of these orders were signed "Angelo Maddi by E. L. Williams", but some were merely initialled "E. L. W." Mr. Prelogar also testified that all of these order sheets were prepared by him when the order was received, and that he mailed copies thereof to the defendant on the first of each month until this suit was filed in June, 1952; that the defendant did not deny owing the account or inform him that the same should have been charged to Mr. Williams.

Typical of Mr. Prelogar's testimony with reference to his conversation with the defendant concerning the material desired, we quote what he said about the selection of shingles: "In fact, he (Maddi) selected the color from our pictorial on the wall, he selected the color that he wished to use, and he asked me about the feasibility of using a roof shingle on a siding wall, and I told him it wasn't impractical, that it had been used, and he selected the color at that time".

Defendant Maddi testified that he had known Prelogar for approximately 20 years, and had purchased substantial amounts of material from him. His version of what occurred on December 21st is as follows: "I took him (Williams) into the Logan-Moore Lumber Company and Bob (Prelogar) was there, and I said, 'Bob, here is a fellow that owns a place down here on Raytown Road. He is going to do some expanding down there, some building', and I said, 'he wants to buy some material'. And Mr. Prelogar asked Mr. Williams what he thought he might have to have, and I was— I had to come to town, so I left Mr. Williams, after introducing him to Mr. Prelogar, left him * * * talking to Mr. Prelogar because I had to come into town. * * *". He denied that he ordered any of the material and stated that he had no business relations with Williams or any interest in the operation of the Rock Springs Tavern. He stated that he received "all the bills" for this material at one time, in March or April, 1952; that he took all the "bills" to plaintiff's office; and "Mr. Prelogar was not there and I left them there with the bookkeeper, stating that these were not my bills and not to mail them to me". He never communicated with Prelogar about the account.

Prelogar testified that the bookkeeper did not report to him the fact, if so, that defendant had returned the "bills" and denied liability therefor.

It appears from the record that the whereabouts of Williams was unknown to the plaintiff and the defendant, and that the bookkeeper was no longer working for the plaintiff. At any rate, neither testified.

The only point presented by defendant-appellant on appeal is that the judgment is against the weight of the evidence.

 This being a jury waived case, we are required to review the case upon both the law and the evidence as in .suits of an equitable nature, and not set aside the judgment unless it is clearly erroneous. We are not bound by the finding of the trial court, but we must give due regard to the opportunity of that court to judge of the credibility of the witnesses. Section

510.310 RSMo 1949, V.A.M.S. and cases cited thereunder.

In assailing the credibility of witness Prelogar, defendant argues that since he did not own the tavern or have anything to do with its operation, it is unbelievable that he would have contracted for lumber and material for the improvement of the tavern; and that Mr. Prelogar could have learned the true owner by inquiring of the proper authorities as to who was the licensee of the tavern. Prelogar and the defendant had been friends for many years, and the defendant had purchased material from Prelogar on various occasions. There was no reason for Prelogar to investigate whether defendant owned the tavern or had some interest in it. It is common experience for business firms to accept orders from regular customers without inquiring why they want the material, or for what purpose it is to be used, or who is to pay the account.

Furthermore, the order blanks were made out in the name of the defendant and, according to Prelogar, they were mailed to him on the first of each month for more than a year without protest from defendant. This is normal procedure of business firms. It is true, defendant testified that he got all of the order slips on the same date, and that he delivered them to plaintiff's bookkeeper and advised her that he did not owe the account. However, he admitted that he at no other time protested the account, or even mentioned the matter to his friend Prelogar.

It is perfectly apparent that the trial court was called upon to, and did, judge of the credibility of the two principal witnesses concerning what occurred in plaintiff's office at the time this account was opened. The court chose to give credence to the testimony of Prelogar, and we can find no reason to disagree with that finding.

The defendant cites Gershon v. Ashkanazie, 239 Mo.App. 1012, 199 S.W.2d 38, wherein this court held that the testimony of defendant in support of an affirmative defense was so incredible that it was unbelievable and reversed the finding of the trial court. But the facts in that case are so different from the instant case that it is not controlling.

We have read and considered all the evidence, and are of the opinion that the judgment is for the right party and should be affirmed. It is so ordered.

All concur.