The **AMERICAN INSURANCE COMPA-NY, a corporation, Plaintiff,**

v.

**Ronald Dale McMICHAEL and Robert H. Burns, Administrator of the Estate of Doyle Victor Karns, Deceased, Defendants.**

No. 63 C 262(3).

United States District Court
E. D. Missouri, E. D.
Dec. 29, 1964.

Morris E. Stokes, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, Mo., for plaintiff.

Robert H. Burns, Clayton, Mo., Jerome W. Seigfreid, Mexico, Mo., Ronald A. Wegmann, Clayton, Mo., for defendants.

REGAN, District Judge.

This is an action by plaintiff for a declaratory judgment against the defendants to determine plaintiff's rights and liabilities under the policy of insurance which was made a part of plaintiff's complaint by reference. The policy of insurance had been issued to Doyle Victor Karns. Jurisdiction is lodged in this Court by reason of Section 2201 of Title 28 U.S.C. and by reason of diversity and the amount in controversy. Defendant McMichael asks the declaration of this court that the said policy of insurance does protect and provide liability coverage to the insured and his personal representatives.

The facts are as follows: Harry Updegraff was the owner of a 1953 Ford automobile upon which there was no liability insurance. On February 1, 1963, he went to the home of Doyle Victor Karns and sought to induce Karns to accompany him on a trip to Jefferson City, Missouri. Updegraff presented himself at the Karns residence on the evening of February 1, 1963, at which time the following persons were present: Mrs. Karns, now deceased, Rolly Karns, age 16, Harry Karns, Dawn Karns and Harry Updegraff. At that time according to the testimony of Rolly Karns, Updegraff asked Doyle Karns to drive his car to Jefferson City. Karns declined to go and urged Updegraff to take the train. The evidence reveals that Updegraff had the appearance of having consumed some alcoholic beverage prior to his arrival at the Karns residence. According to the evidence of Rolly Karns, Updegraff insisted on Doyle Karns accompanying him and volunteered to give Doyle Karns $15.00 for his trouble in accompanying him and driving his car. Doyle Karns ultimately consented to go. Karns and Updegraff left the second floor apartment and were observed to enter the Updegraff car which had been parked in front of the Karns apartment. Rolly Karns observed his father enter the car on the driver's side and Updegraff enter the car on the passenger's side. Thereafter the car departed. On the evening of February 2, 1963, Doyle Karns was killed when the Updegraff car which he was operating and in which he was the sole occupant collided with the car of defendant Ronald Dale McMichael on U. S. Highway 40 in Montgomery County, Missouri. The collision caused personal injuries to McMichael and the death of Doyle Victor Karns.

The Court received the testimony of Harry Updegraff over the objection of the defendants that the testimony of the witness Harry Updegraff was barred by the Dead Man's Statute, being 491.-010 V.A.M.S.

This objection was ruled against the defendants for the reason that Updegraff was not a party to the litigation and had no interest in this action or the subject matter of this case at the time the testimony was offered by the witness.

The Court in Beckers-Behrens-Gist Lumber Company v. Adams, St. Louis Court of Appeals, 311 S.W.2d 70 considered this matter and held that the testimony was not barred and stated at page 73:

"* * * Beckers was not offered as a witness 'to testify in his own favor' because at the time he took the stand he had no personal financial interest in the corporation, or

in the contract, or in the outcome of the litigation. By that time he had sold all of his stock and severed his connection with the corporation. * * * It is the witness' interest at the time he is offered as a witness that determines his competency, not his interest at the time of the occurrence or of the formation of the contract."

■■ The test is not, as defendants contend, based upon the fact that if decedent were living he would refute the testimony given by the witness. This would be true in every case where one of the parties to the litigation was dead and some witness was offered to give testimony adverse to decedent's position in that litigation. The determining factor is the interest of the witness at the time he is called to testify.

Updegraff testified that he and Karns had gone to Jefferson City and spent the night with the Cooper brothers. The next day he and Karns looked for a trailer which was for sale and which they did not locate. Updegraff drove the car to Mexico, Missouri, with Karns as a passenger. He parked the car and removed the keys from the ignition and placed them over the sun visor. Afterwards he and Karns went into the tavern. According to Updegraff he and Karns separated in the tavern and at about five minutes to five he decided to get a haircut and told a man whose name is unknown that he was going to get a haircut and that if Karns asked about him to tell Karns where he had gone. Updegraff did not go to the barber shop across from the bar, but went to a barber shop a block and a half away. Upon returning to the tavern, he found the car and Karns gone. There had been no discussion concerning the use of the car. He believed Karns had the car and that Karns would return at any moment. He further said he thought that Karns might have gone to a nearby town to see about buying some rabbits. After waiting at the tavern, Karns went to the Jefferson Hotel and ate and inquired if there were rooms available.

Thereafter Updegraff called his wife to see if she had heard from Karns. Ultimately he boarded the Wabash train and returned to St. Louis and his home. The following morning he went to Karns' house to see about his car, but Karns was not there. Later he received information concerning the accident from the police. Upon learning of the accident he went to the funeral home in Fulton, Missouri, with Rolly Karns, William Krueger and Krueger's father to identify Karns' body. Updegraff testified that he and Karns had been friends for a number of years. The purpose of their trip was purely social. The evidence reveals that in times past Karns had received permission to drive Updegraff's automobile.

It would appear that the sole issue to be decided in this action is whether or not Doyle Victor Karns had permission to use the automobile of Harry Updegraff at the time of the collision.

The policy of insurance carried by the decedent provided under the clause naming persons insured with respect to non-owned automobiles:

"(b) With respect to a non-owned automobile

"(1) the named insured,

"(2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner."

■ Permission as used in the policy has an established meaning in that it may be "express" permission or it may be "implied" permission. Nye v. James, Mo.App., 373 S.W.2d 655.

The term permission as used in this provision contemplates more than mere sufferance or tolerance without taking steps to prevent. Haynes v. Linder, Mo. App., 323 S.W.2d 505, 510. M. F. A. Mutual Insurance Company v. Alexander, Mo.App., 361 S.W.2d 171, 179.

■ Further, implied permission cannot arise from the fact that someone obtains possession of property and uses it without the knowledge of the owner.

Hanover Insurance Company v. Abchal, Mo.App., 375 S.W.2d 605.

■ The fact that Updegraff may not have objected to Karns taking the car had he known about it or the fact that Karns, prior to February of 1963, may on occasion have used Updegraff's car with permission has no probative value or relevancy.

■ It is the opinion of this Court that all of the evidence fails to establish that Updegraff's car was being driven with permission of the owner and therefore under the terms of the policy there is no coverage and it is the judgment of this Court that the policy of insurance issued to Doyle Victor Karns does not cover the accident in question.

It is therefore ordered that this memorandum constitute this Court's findings of fact and conclusions of law and that judgment be entered for the plaintiff and the Clerk of this Court is directed to prepare judgment in accordance herewith.